**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICHAEL ROBINS,** § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | **Civil Action No. 3:08-CV-30-O** |
| **ROBERT BASSMAN, et al.,** § | **ECF** |
| Defendants. § | |
| § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the: (1) Motion to Realign Parties and Suggestion of Lack of Subject Matter Jurisdiction (Doc. # 19) filed on February 16, 2009 by Defendants Dixon & Garfield Management Company, Inc. ("DGMC"), Raymond Garfield, Jr. ("Garfield"), and Reagan Dixon ("Dixon") (collectively, the "Dixon Garfield Defendants"); (2) Plaintiff Robins' Response (Doc. # 22) filed on March 9, 2009; (3) Dixon Garfield Defendants' Reply to Robins' Response (Doc. # 23) filed on March 17, 2009; and (4) Plaintiff Robins' Response to Defendant's Reply (Doc. # 24) filed on March 19, 2009.

The Court has determined that the Motion to Realign should be and hereby is **GRANTED**. The Court **ORDERS** that Wesley Jeanes be designated as a plaintiff and **DISMISSES** the case for want of subject matter jurisdiction.

**I. BACKGROUND**

This opinion addresses when a party is to be realigned in a diversity of citizenship case.

**A.     Citizenship of the Parties**

The suit currently before the Court was filed by Plaintiff Michael Robins,[1] a citizen of Colorado. Robins' Original Complaint names a number of defendants, almost[2] all citizens of Texas, including Defendant Wesley Jeanes.

**B.    Joint Venture Formed**

The suit arises out of the management of property once owned by the South Grand Prarie - Belt Line Road II Joint Venture (the "Joint Venture"), one of eight defendants in this suit. In 1973, a number of individuals formed the Joint Venture as an investment vehicle and acquired a large tract of land (the "Property") in Dallas County, Texas as an investment. The Joint Venture's partners and founding members included: R.C. Robins (Plaintiff Robins' father, now deceased[3]), Defendant Wesley Jeanes, Defendant Robert Rogers, Defendant Robert Bassman, and Defendant Norman McMurry.

In 1976, the Joint Venture entered into a management agreement with Defendant Dixon & Garfield Management Company ("DGMC") whose primary shareholders, officers and directors were Defendant Reagan Dixon and Defendant Raymond Garfield, Jr. As part of the agreement, title to the Property was conveyed to DGMC for management on behalf of the Joint Venture.

**C.    Condemnation Proceedings**

In 1978, The Army Corps of Engineers took the surface estate of the Property by eminent domain. However, the Declaration of Taking, which was served on DGMC, excluded the Property's mineral estate from the condemnation. Pursuant to the Declaration of Taking, an interest in the

---

[1] Plaintiff Robins filed individually and as executor of his father's Oklahoma estate.

[2] Defendant Robert Rogers, who is not relevant to this analysis, is a citizen of Connecticut.

[3] Plaintiff Robins inherited a portion of his father's interest in the Joint Venture.

mineral estate was clearly retained by the Joint Venture, but the parties dispute whether DGMC communicated this fact to the Joint Venture partners. Plaintiff Robins and Defendant Jeanes claim that DGMC failed to tell the partners of the retained interest, an allegation the remaining defendants deny.

**D.     Alleged Agreement to Wind Up the Joint Venture**

In 1979, the Joint Venture received an initial condemnation award from the government of $1,120,900.00. The Joint Venture used this money to pay the mortgage on the Property and distributed the remainder among the Joint Venture partners.

Around this same time, the Joint Venture partners met and decided to contest the amount of the initial condemnation award. At this meeting, they agreed to retain attorneys on a contingency fee basis to assist in the contest, and that once the condemnation legal matters were finished, the Joint Venture would distribute the compensation award among the Joint Venture partners.

The parties dispute whether any other matters were discussed at this meeting. Plaintiff Robins, Defendant Jeanes, and the Joint Venture's attorney allege that the partners agreed to wind up the partnership once the final condemnation award was received, but the remaining defendants deny that this agreement was reached. The parties also dispute whether the winding up of the Joint Venture ever began. Plaintiff Robins, Defendant Jeanes, and the attorney for the Joint Venture claim that such winding up began in 1981, an occurrence all of the other defendants deny. Plaintiff Robins and Defendant Jeanes also claim that at some point, DGMC represented to some or all of the partners that the Joint Venture assets had been completely liquidated and distributed to the partners. All other defendants deny this claim as well.

Plaintiff Robins and Defendant Jeanes claim that DGMC dissolved in 1993 and should have discovered and transferred the record title of the mineral interest to the Joint Venture or Joint Venture interest holders at that time. All other defendants deny these claims.

**E.     Retained Mineral Interest Becomes Lucrative**

Defendants Dixon and Garfield[4] were contacted in 2005 by various oil and gas companies about possible exploration of the Property's minerals.

Plaintiff Robins and Defendant Jeanes claim that DGMC[5] circulated a new management agreement among the Joint Venture interest holders.[6] Plaintiff Robins claims the "drafting and circulation of the proposed management agreement was a blatant power and money grab by DGMC, Garfield and Dixon, and an intentional attempt to take advantage of uninformed and unsuspecting persons." *Robins' Original Complaint*, p. 9. Defendant Jeans admits these allegations. *Original Answer of Wesley Jeanes*, p. 3. All other defendants deny the allegations.

Plaintiff Robins and Defendant Jeanes further allege that the "persons and entities holding interests in the Joint Venture" met on October 4, 2007 and established an internal management committee to manage the affairs of the Joint Venture, selected seven interest holders to serve on that committee, and decided to "recover Joint Venture money and property from DGMC and terminate any and all involvement and interference of DGMC..., Garfield and Dixon in the affairs of the Joint

---

[4] Mr. Dixon and Mr. Garfield's corporation, DGMC, still held record title to the Property interest retained by the Joint Venture.

[5] Plaintiff Robins and Defendant Jeanes claim that Dixon and Garfield had dissolved the original DCMG prior to 2005 and that they incorporated a new company some time after 2005, also named Dixon & Garfield Management Company. All other defendants deny this allegation.

[6] These included both original Joint Venture partners and the heirs of deceased Joint Venture partners.

Venture." *Robins' Original Complaint* p. 10, *Jeanes Original Answer* p. 3.   All other defendants deny these allegations.

At some point between 2006 and 2007,[7] Dixon and Garfield executed a mineral lease on behalf of the Joint Venture and received a bonus payment under that lease of approximately $2 million.  Plaintiff Robins and Defendant Jeanes claim that DGMC "paid itself a management fee of $119,981, an amount far in excess of the reasonable value of any service which DGMC may have rendered to ...the Joint Venture." *Robins' Original Complaint*, p. 11, *Jeanes' Original Answer* p. 3.  All other Defendants deny this claim.

Plaintiff Robins claims that he is entitled to money damages from the defendants and has requested that the defendants pay him his full share of the $2 million bonus payment (without deducting any of DGMC's management fee).  Defendant Jeanes admits the truth of these allegations and states that he has been "working affirmatively to secure and deliver to Robins his full portion of the bonus payment."  *Jeanes' Original Answer* p. 3.   All other defendants deny Robins' entitlement to additional money.

## II. ANALYSIS

Plaintiff Robins brings this suit for: (1) breach of contract and duty of care by Defendants Bassman, McMurray, Rogers, and Jeanes; (2) tortious interference by Defendants DGMC, Garfield, and Dixon; (3) conversion by Defendants DGMC, Garfield, and Dixon; (4) promissory estoppel against Defendants Joint Venture, DGMC, and Garfield; (5) an accounting by all defendants; (6) injunctive relief against Defendants DGMC, Dixon, and Garfield; (7) exemplary damages against

---

[7]From the pleadings, it is unclear when the mineral lease was executed.

defendants DGMC, Dixon, and Garfield; (8) and attorneys fees against each defendant. Defendant Jeanes admits to Plaintiff Robins' entitlement for virtually all of these claims.[8]

## A. § 1332 Jurisdiction: Diversity of Citizenship Required

Plaintiff Robins asserts diversity of citizenship under 28 U.S.C. § 1332 as the sole basis for federal jurisdiction in this matter. If the parties' citizenship do not satisfy the diversity requirement of 28 U.S.C. § 1332,[9] this Court has no subject matter jurisdiction and the case must be dismissed.

Complete diversity of citizenship between parties opposed in interest is a requisite of jurisdiction under § 1332. Otherwise stated, no true plaintiff may share citizenship with any true defendant. In this case, at first blush, complete diversity of the parties appears to exist. The only named plaintiff, Plaintiff Robins, is a citizen of Colorado, and no named defendant is a citizen of Colorado.

## B. "Look Beyond the Pleading" to Determine Parties Opposed in Interest

However, "jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). When determining whether complete diversity exists among parties opposed in interest, "it is the duty of the court to look beyond the pleading and arrange the parties according to their actual side in the controversy." *Bundag v. Euramerica Co.*, 510 F. Supp 622, 624 (N.D. Tex. 1981) (citing *City of Indianapolis*, 314 U.S. at 69).

*1. The Test for Realignment*

---

[8] Defendant Jeanes denies that he breached any duty, that he or the Joint Venture breached any contractual obligations, and that Robins is entitled to recover any attorneys' fees. He admits the liability of all other defendants for all of Robins' claims except attorneys' fees.

[9] In relevant part, 28 U.S.C. § 1332 reads, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy...is between— (1) citizens of different States" 28 U.S.C. § 1332(a).

Generally, the court must realign so that the parties with the same 'ultimate interests' in the outcome of the case are on the same side. *Lowe v. Ingalls Shipbuilding, A Div. Of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984) (citing Wright, Miller & Cooper, *Federal Practice and Prodecure: Jurisdiction* § 3607). This test is meant to ensure that there is 'an "actual," * * * "substantial," * * * controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." Wright, Miller & Cooper, *Federal Practice and Prodecure: Jurisdiction* § 3607.

### a. Determine the Primary and Controlling Matter in Dispute

The first step in the analysis is for this Court to determine the "primary and controlling matter in dispute," which is identified by the "plaintiff's principal purpose for filing its suit" *Zurn Industries, Inc. v. Acton Construction Co.*, 847 F.2d 234, 237 (5th Cir. 1988); *Lowe*, 723 F.2d at 1178.

### b. Collision of Interest in the Controlling Matter

Next, the court must determine which parties have a "collision of interest" with the plaintiff regarding the controlling matter and must align these parties as defendants in the case. *See Bundag*, 510 F.Supp at 624 (court realigned a plaintiff as defendant).

Likewise, any parties with interests identical to or coinciding with those of the plaintiff on the principal matter in dispute must be aligned as plaintiffs. *See City of Indianapolis*, 314 U.S. at 74 (where the principal matter in dispute was whether a lease was valid, a named defendant who, like plaintiff, wanted the lease enforced, was realigned as a plaintiff); *Lowe* 723 F.2d at 1178 (defendant who took identical positions to the plaintiffs on the principal matters in issue was realigned as a plaintiff); *Dawson v. Legion Indem. Co.*, 2000 WL 124813 (N.D. Tex.) (defendant

should be realigned as plaintiff even though they disagreed on legitimate but non-controlling issues because their interests were aligned on the controlling issue in dispute).

When determining the parties' interests, the court makes "a practical determination based on the nature of the dispute." *Bundag*, 510 F. Supp at 624.

*2. The Test Applied to These Facts*

In this case, Plaintiff Robins' principle purpose for filing suit is to establish that the Joint Venture began "winding up no later than 1981" (*Robins' Original Complaint*, p. 6), and therefore DGMC's actions taken after 1981 (outside the permissible scope of winding up activities) were wrongful and not legally binding on the Joint Venture or the Joint Venture partners.

On this principal and controlling matter, named defendant Wesley Jeanes lacks the necessary collision of interest with Plaintiff Robins to form an actual, substantial controversy. In fact, Defendant Jeanes adamently agrees with the plaintiff that the Joint Venture began winding up no later than 1981. Defendant Jeanes not only admits virtually every allegation made by Plaintiff Robins, but affirmatively avers additional information, which, if true, gives assistance to Plaintiff Robins and harms Mr. Jeanes' co-defendants. *See generally, Original Answer of Wesley Jeanes*. Defendant Jeanes' prayer for relief even requests that the plaintiff recover money "damages against all other defendants,"[10] an accounting of the Joint Venture, injunctive relief against DGMC, and that the Court order the final winding up of the Joint Venture. *Jeanes' Original Answer*, p. 6-7.

Defendant Jeanes' interests are virtually identical to those of Plaintiff Robins on the principal matter in dispute. From the parties' pleadings, it is clear that Defendant Jeanes and Plaintiff Robins share the same "ultimate interest" in the outcome of the case– specifically, that the Court determine that the winding up of the Joint Venture occurred in 1981 and that the actions taken and fees earned

---

[10]Except Jeanes and the Joint Venture

by DGMC after that time were without authority and void. Defendant Jeanes should be realigned as a plaintiff in this case.[11]

C.    **Parties' Interest In Non-primary Disputes Will Not Prevent Realignment**

The Court turns next to the breach of contract and breach of duty claims that Plaintiff Robins has asserted against each of the defendants who is also a partner in the Joint Venture, including Defendant Jeanes. Even assuming Plaintiff Robins and Defendant Jeanes have a legitimate[12] dispute on these non-primary issues (rather than a strategicly staged dispute intended to create the appearance of jurisdiction), the propriety and necessity of realignment in this case is not affected. Only the "actual and substantial controversy" in a case determines a party's proper alignment, even where the parties' interests are legitimately adverse on one issue but aligned on another. *See Sutton v. English*, 246 U.S. 199, 204 (1918) (finding error in realignment of the defendant as a plaintiff where she was adverse to the plaintiffs on the primary matter in dispute. The court held it immaterial that her interests coincided with the plaintiffs on a non-primary issue.). A collision of interest in a dispute other than the primary and controlling matter does not prevent realignment. *Dawson*, 2000 WL 124813 (N.D. Tex. 2000); *see also Lowe*, 723 F.2d 1173.

### III. CONCLUSION

---

[11]The above information alone, all found in the parties' original pleadings, is enough to support the conclusion that Defendant Jeanes has insufficient collision of interest with Plaintiff Robins. Additional support for this conclusion includes the June 8, 2009 suit Mr. Jeanes filed in Texas state court on this same matter, making the very same claims against the same individuals. The vast majority of Mr. Jeanes' 23 page state court petition is copied verbatim from the federal court complaint filed by Mr. Robins on January 7, 2008 (Doc. # 1) in this case.

[12] Defendant Jeanes agrees that all of the other Joint Venture partners are liable to Robins under the claims, but he refutes his own liability under these claims.

For the foregoing reasons, the Motion to Realign Parties is **GRANTED**. The parties are **ORDERED REALIGNED**, and Wesley Jeanes,[13] a resident of Texas, is designated a plaintiff.

The only jurisdictional basis alleged is diversity of citizenship under 28 U.S.C. § 1332. For jurisdiction to be vested in the federal courts under 18 U.S.C. § 1332, no true plaintiff may share citizenship with any true defendant. Post-realignment,[14] the parties' citizenship do not support such jurisdiction, as citizens of Texas now appear as both plaintiff and defendants.

The Court therefore finds that this action should be and hereby is **DISMISSED** for want of subject matter jurisdiction.

**SO ORDERED** this **2nd** day of **September, 2009.**

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**

---

[13] Because of this conclusion, it is unnecessary for the Court to determine whether the Joint Venture or any other party should also be realigned as a plaintiff.

[14] The Court takes no position on whether or not the parties' citizenship as they were originally aligned presented adequate diversity to support jurisdiction under 28 U.S.C. § 1332.